**UNITED STATES of America, Plaintiff,**

v.

**Eugene BOFFA, Sr. et al., Defendants.**

**Crim. A. No. 80–36.**

United States District Court,
D. Delaware.

Feb. 19, 1981.

---

**69.** D.I. 69 & 70.

**70.** D.I. 96, p. 63.

**71.** D.I. 67.

**72.** D.I. 98, 99, 100 & 101.

Joel M. Friedman, Philadelphia, Pa., Edward J. Levitt, Washington, D. C. and Ronald G. Cole, Philadelphia Strike Force, Philadelphia, Pa., Kenneth F. Noto, U. S. Dept. of Justice, Washington, D. C. and James W. Garvin, Jr., U. S. Atty., Wilmington, Del., for plaintiff.

Glenn A. Zeitz, Zeitz & Zeitz, Philadelphia, Pa., for defendant Francis Sheeran.

## MEMORANDUM OPINION
### (On Recusal Motion)

LATCHUM, Chief Judge.

This criminal action was initiated in this Court on July 14, 1980, by the Grand Jury's return of an eleven count indictment

against Eugene Boffa, Sr., Francis Sheeran, Louis Kalmar, Sr., Robert Boffa, Sr., Chandler Lemon, David Mishler, and Robert Rispo.[1] Count I charges all the defendants with conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") in violation of 18 U.S.C. § 1962(d). Count II charges all the defendants with a substantive violation of RICO, 18 U.S.C. § 1962(c). Counts III and IV charge defendant Sheeran as President of Local 326, International Brotherhood of Teamsters, with violating certain criminal provisions of the Taft-Hartley Act, 29 U.S.C. § 186(b)(1) and (d). Counts V through XI charge defendants Eugene Boffa, Sr., Sheeran, and Lemon with mail fraud in violation of 18 U.S.C. §§ 1341 and 2.

Defendant Sheeran, who was arraigned on July 23, 1980, and entered a not guilty plea to all counts,[2] on February 10, 1981, filed a motion and supporting affidavit to have this Court recuse itself from acting as presiding judge in this jury case under 28 U.S.C. §§ 144, 455(a) and 455(b)(1).[3]

I. *Basis for Recusal Motion*

Sheeran's recusal affidavit, accompanied by his attorney's certificate stating that his counsel believes that the affidavit was made in good faith and was timely, reads, in pertinent part, as follows:

1. Judge Latchum presided over the case of *Delaware Coca-Cola Bottling Company, Incorporated v. General Teamsters Local Union 326* and handed down an opinion on July 18, 1979 in favor of the plaintiff. (474 F.Supp. 777 (1979)). Subsequently, the Third Circuit Court of Appeals reversed that decision. (June 25, 1980) (624 F.2d 1182, (3rd Cir. 1980)).

2. At the time of the abovementioned proceedings, Francis ("Frank") Sheeran was president of Local 326. He is referred to throughout the District Court opinion wherein one of the major issues

was whether the Union should be held responsible for a sympathy strike by production and maintenance employees of Coca-Cola. The decision rendered by the District Court was based upon testimony by Frank Sheeran. The Court held that on the basis of all the evidence the Union was directly responsible for the sympathy strike. Footnote 8 of the District Court's opinion states:

> "*After hearing Mr. Sheeran's testimony and observing his demeanor, the Court has concluded that his story is not credible.* The Court *simply does not believe* that a president of a union would call a strike by one group of employees at a plant and at the same time give no instructions to the other union employees at the same plant. (See Tr. 79–80). Such a result seems *especially unbelievable* in this case in view of the fact that Mr. Sheeran admitted that he had told all of the employees to go on strike a few months earlier in connection with the same dispute. (Tr. 84–85). (emphasis supplied in original)

474 F.Supp. 777 at 781.

Footnote 12 continues:

> "Mr. Sheeran did testify that he did not believe that the No-Strike clause barred sympathy strikes. (Tr. 81, 93). *The Court however, does not credit that testimony.* (emphasis supplied in original)

474 F.Supp. 777 at 783.

Based on the foregoing facts, the affidavit suggests: (1) that this Court harbors "a personal bias or prejudice against Sheeran" within the meaning of 28 U.S.C. § 144; (2) that its "impartiality might reasonably be questioned" under 28 U.S.C. § 455(a); and (3) that it "has a personal bias or prejudice concerning" Sheeran "or personal knowledge of disputed evidentiary facts concern-

---

1. Docket Item ("D.I.") 1; defendant David Mishler has been severed from this action (D.I. 123, ¶ 4) and Robert Rispo has entered into a plea agreement with the Government and has indicated he will plead guilty to Count I of the indictment.

2. D.I. 2.

3. D.I. 148.

ing the proceeding" within the language of 28 U.S.C. § 455(b)(1), and concludes that for any one or all of these reasons the Court should disqualify itself from presiding in this criminal case.

In further support of his position, Sheeran's affidavit continues:

4. This personal bias is further evidenced by the fact that the [Coca-Cola] case was reversed on appeal. The Third Circuit Court of Appeals differed with the Judge with respect to Mr. Sheeran's testimony. It states:

"This testimony is not clear and unmistakable evidence that the president believed the contract waived the right of the production and maintenance employees to strike."

624 F.2d 1182 at 1189. The Appeals Court further stated:

"The district court also relied on the conduct of the parties prior to and during the strike here to determine their understanding of the contract as it related to whether the sympathy strike was prohibited. We of course recognize the danger inherent in utilizing such evidence because it may not reflect the parties' intention of the time of the execution of the contract. Nevertheless, the district court considered such evidence in reaching its result, and we feel constrained to address it.

Id.

5. It is believed by Mr. Sheeran that the Judge has already assessed Mr. Sheeran's demeanor and holds a personal prejudice against him as a credible witness. It is further believed by Mr. Sheeran that Judge Latchum cannot be impartial as a result. The statements made in the above opinion fairly support Mr. Sheeran's belief that Judge Latchum's impartiality has been and will continue to be impeded by this personal prejudice and that Mr. Sheeran as a result will not receive a fair trial.

6. Judge Latchum's impartiality might reasonably be questioned in the event that Mr. Sheeran is called upon to testify in an evidentiary hearing with regard to co-defendant, Robert Rispo. His Honor has already stated that Mr. Sheeran "is not credible" after "hearing his testimony and observing his demeanor." 474 F.Supp. 777, 781, 783, footnotes 8, 12.

## II. The Applicable Law

There is no question that a criminal defendant "is entitled to the cold neutrality of an impartial judge." *United States v. Orbiz*, 366 F.Supp. 628, 629 (D.P.R. 1973). Indeed, trial before an unbiased judge is essential to due process. *Johnson v. Mississippi*, 403 U.S. 212, 216, 91 S.Ct. 1778, 1780, 29 L.Ed.2d 423 (1971). However, these sound legal principles cannot be advanced so broadly as to permit either the government or a defendant under the guise of a motion to recuse to engage in judge-shopping. *Mavis v. Commercial Carriers, Inc.*, 408 F.Supp. 55, 61 (C.D.Cal.1975); *United States v. Devlin*, 284 F.Supp. 477, 482 (D.Conn.1968).

28 U.S.C. § 144 provides[4] that a district judge must recuse himself whenever a party to a proceeding before him files a timely and sufficient affidavit that the judge has a personal bias or prejudice against him or in favor of any adverse party. Thus, this Court against whom the § 144 affidavit is filed must pass on the legal sufficiency of the facts alleged in the

---

4. 28 U.S.C. § 144 reads:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

affidavit and its timeliness. *United States v. Townsend*, 478 F.2d 1072, 1073 (C.A.3, 1973); *Behr v. Mine Safety Appliances Co.*, 233 F.2d 371, 372 (C.A.3, 1956). In passing on the recusal affidavit on the grounds of personal bias and prejudice, the facts alleged in the affidavit must be accepted as true and the judge may not question either the truth of the allegations or the good faith of the affidavit, *Berger v. United States*, 255 U.S. 22, 33–35, 41 S.Ct. 230, 233, 65 L.Ed. 481 (1921); *Simmons v. United States*, 302 F.2d 71, 75 (C.A.3, 1962), even though the judge may know to a certainty that the allegations of personal prejudice are false. *Berger v. United States*, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921); *Hodgson v. Liquor Salesman Union*, 444 F.2d 1344, 1348 (C.A.2, 1971). The test is, assuming the truth of the facts alleged, would a reasonable person conclude that a personal as distinguished from a judicial bias exists. *Mims v. Shapp*, 541 F.2d 415, 417 (C.A.3, 1976). Personal bias is defined as an attitude arising from extrajudicial sources that results "in an opinion on the merits on some basis other than what the judge learned from his participation in the case," *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966), or results in an "attitude towards petitioner that is significantly different from and more particularized than the normal, general feelings of society at large against convicted wrongdoers." *Mims v. Shapp, supra*, at 417.

Turning now to 28 U.S.C. § 455, it provides in pertinent part as follows:

(a) Any justice, judge, magistrate, or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
. . . .

While § 455 is self-enforcing on the part of a judge, it also may be asserted by a party by filing a motion to recuse. *Davis v. Board of School Commissioners*, 517 F.2d 1044, 1051 (C.A.5, 1975); *Rapp v. Van Dusen*, 350 F.2d 806, 809 (C.A.3, 1965). Section 455(a) is general in nature and does not rest on the personal bias or prejudice structure of either § 144 or § 455(b)(1). *Parrish v. Board of School Commissioners*, 524 F.2d 98, 103 (C.A.5, 1975). It is broader than § 144 since disqualification is warranted not only where there is personal bias, but where the impartiality of the judge might reasonably be questioned. *United States v. Ritter*, 540 F.2d 459, 462 (C.A.10, 1976). Thus, there must be a factual basis for disqualifying a judge under § 455(a) and the facts alleged must be such as would lead a reasonable person to question the impartiality of the judge. *Rice v. McKenzie*, 581 F.2d 1114, 1116 (C.A.4, 1978); *United States v. Cowden*, 545 F.2d 257, 265 (C.A.1), *cert. denied*, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1976).

Section 455(b)(1) is substantially similar to § 144 and the standard to be applied is whether a reasonable person would conclude that a judge is personally biased or prejudiced against a particular party. *Davis v. Board of School Commissioners, supra* at 1052.

Whether a recusal motion is based on § 144, § 455(a) or § 455(b)(1), it is clear that a claim of bias or prejudice based on judicial knowledge gained from prior hearings or other cases is not a sufficient ground for disqualification even though the judge may have issued rulings adverse to the defendant in the same or different litigation. The determination of bias, prejudice or lack of impartiality must be made on the basis of conduct which is extra-judicial in nature. *United States v. Grinnell*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966); *United States v. Clark*, 605 F.2d 939, 942 (C.A.5, 1979); *Blizard v. Frechette*, 601 F.2d 1217, 1220 (C.A.1, 1979); *Smith v. Danyo*, 585 F.2d 83 (C.A.3, 1978); *King v. United States*, 576 F.2d 432 (C.A.2, 1978); *United States v. Wolfson*, 558 F.2d

59, 64 (C.A.2, 1977); *Mayberry v. Maroney*, 558 F.2d 1159, 1162 n. 16 (C.A.3, 1977); *United States v. Cowden*, 545 F.2d 257, 265 (C.A.1), *cert. denied*, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1976); *United States v. Patrick*, 542 F.2d 381, 390 (C.A.7, 1976); *Mims v. Shapp*, 541 F.2d 415, 417 (C.A.3, 1976); *United States v. Bernstein*, 533 F.2d 775 (C.A.2, 1976); *United States v. Cook*, 400 F.2d 877 (C.A.4, 1968), *cert. denied*, 393 U.S. 1100, 89 S.Ct. 898, 21 L.Ed.2d 792 (1969); *Wolfson v. Palmieri*, 396 F.2d 121 (C.A.2, 1968); *United States v. Baker*, 441 F.Supp. 612 (M.D.Tenn.1977); *Honneus v. United States*, 425 F.Supp. 164 (D.Mass. 1977); *United States v. Sinclair*, 424 F.Supp. 718 (D.Del.1976).

The reason for this rule was well stated in *United States v. Cowden, supra* at 265–66:

> Insofar as the judge's presiding over the prior trials of Cowden's codefendants may have resulted in his learning about facts damaging to Cowden, the situation is not much different from when a presiding judge learns about evidence, later excluded, damaging to a defendant at a *voir-dire* or bench conference in the same proceeding. While judges attempt to shield themselves from needless exposure to matters outside the record, they are necessarily exposed to them in the course of ruling on the admission of evidence; and the judicial system could not function if judges could deal but once in their lifetime with a given defendant, or had to withdraw from a case whenever they had presided in a related or companion case or in a separate trial in the same case.

There is no indication that Congress by adopting § 455 intended to overrule the gloss placed on § 144 by court decisions that it applies only to conduct which runs against a party and that disqualification results from extra-judicial conduct rather than from matters arising in a judicial context. *Davis v. Board of School Commissioners, supra* at 1052; *Blizard v. Fielding*, 454 F.Supp. 318, 321 (D.Mass.1978).

 In this case, the defendant Sheeran has not satisfied the statutory standards of § 144 by timely filing his motion to recuse, affidavit and certificate of counsel. These documents were not promptly filed after the facts forming the basis of the disqualification became known. *Ex Parte American Steel Barrel Co.*, 230 U.S. 35, 44, 33 S.Ct. 1007, 1010, 57 L.Ed. 1379 (1913); *Davis v. Cities Service Oil Co.*, 420 F.2d 1278, 1282 (C.A.10, 1970); *United States v. Hoffa*, 382 F.2d 856, 859 (C.A.6, 1967), *cert. denied*, 390 U.S. 924, 88 S.Ct. 854, 19 L.Ed.2d 984 (1968). The timeliness requirement of § 144 turns not only on the actual time elapsed but particularly on the factor whether the affiant has participated in substantial pretrial motions between the time he first learned of the asserted bias and the time he filed his § 144 request. *Smith v. Danyo*, 585 F.2d 83, 86 (C.A.3, 1978). In the latter case, Judge Gibbons pointed out one of the reasons for the timeliness requirement, stating:

> The judicial process can hardly tolerate the practice of a litigant with knowledge of circumstances suggesting possible bias or prejudice holding back, while calling upon the Court for hopefully favorable rulings, and then seeking recusal when they are not forthcoming.

585 F.2d at 86.

 Turning to the facts of this case, it can hardly be said that the § 144 motion was timely filed. Sheeran became aware on January 29, 1979 that this Court sitting without a jury would be the fact-finder in the civil action entitled *Delaware Coca-Cola Bottling Company, Inc. v. General Teamsters Local Union 326*, 474 F.Supp. 777 (D.Del.1979), because the parties had not demanded a jury trial and Sheeran personally testified during the trial on behalf of the defendant union of which he was president. 474 F.Supp. at 781. The decision in that civil case was handed down by this Court on July 18, 1979. 474 F.Supp. at 777. Thus the defendant Sheeran has known the factual basis for his affidavit since he was arraigned before this Court on July 23, 1980. Since that date he and his counsel have actively participated in substantial and protracted pretrial proceedings in this

Court. They have either filed, joined in, or briefed more than twenty-eight separate pretrial motions which culminated in a 126-page opinion disposing of those various motions.[5] They took an active part in a nine-day *Starks* and suppression hearing which took place on December 9–12, 1980 and January 5–9, 1981.[6] The suppression motion is now being briefed.[7] In addition, Sheeran filed a second motion for a severance on January 15, 1981[8] which the Court ruled upon on February 2, 1981.[9] Then on January 19, 1981, Sheeran joined the other defendants in requesting an evidentiary hearing and appropriate relief with respect to defendant Rispo.[10] The Court has had this motion under advisement since January 27, 1981 when all briefing on this motion was completed.[11]

Moreover, Mr. Zeitz, Sheeran's attorney, personally became aware of the facts underlying this recusal motion at least four weeks before this motion was filed in this Court. On January 8, 1981, Mr. Zeitz examined Special Agent Tamm during the suppression hearing on the contents of Defendants Suppression Exhibit ("DS") 12, an FBI report referring to an Otto Bowden who had represented the Delaware Coca-Cola Bottling Company in the civil suit which was tried before this Court in January 1979. At that point in the testimony, the Court stated that it had tried that case.[12] Mr. Zeitz also stated later that day that he was going to file two or three additional motions[13] and he was directed by the Court to file all his motions by January 16, 1981.[14] At the close of the suppression hearing on January 9, 1981, Mr. Zeitz again brought up the Coca-Cola civil case and the

Court advised him of that case and sent him the reporter's citation.[15]

Thus the basis assigned by Sheeran for the Court's recusal was known to the defendant from July 23, 1980, and certainly was brought to his counsel's attention on January 9, 1981 after substantial and protracted pretrial proceedings have been ruled upon and matters are still pending either under advisement or in the briefing stage. Thus, the Court finds under these circumstances that Sheeran's § 144 recusal motion was not timely filed.

But more importantly, the Court finds that the recusal affidavit is not legally sufficient to sustain the motion to recuse under § 144 and that the Court need not recuse itself under § 455. There is absolutely nothing in the affidavit to indicate that this Court had any substantive extrajudicial exposure to the facts surrounding this case. It is true this Court sat as a fact-finder in the entirely unrelated Coca-Cola case involving an allegedly unlawful strike and in the course of making the findings of fact and conclusions of law required by Rule 52(a), F.R.Civ.P., found that Sheeran's testimony was not credible on certain issues in that case. 474 F.Supp. at 781 n.8 and 783 n.12. There was no friction or personal animus toward the witness Sheeran in making these findings in the Coca-Cola case; it was the result of weighing the testimony that was given during trial of that case. While those findings provided the local union with a basis for claim of legal error, they are not grounds for the Court's recusal in the instant case.

Indeed, this Court through the extended pretrial proceedings in this case and the

5. D.I. 122.

6. D.I. 138, 139, 146, 149, 150–54.

7. D.I. 140, ¶ 4.

8. D.I. 136.

9. D.I. 147.

10. D.I. 137.

11. D.I. 144.

12. D.I. 149, Transcript ("Tr.") p. H–135.

13. D.I. 150, Tr. I–75.

14. D.I. 150, Tr. I–77.

15. *Id.*, Tr. I–79. Thus, it is difficult to understand Mr. Zeitz's certificate and affidavit, dated February 9, 1981, filed with Sheeran's recusal motion which states: "I further certify that this affidavit has been filed in a timely fashion; insofar as certain facts did not come to my attention until the present time." (D.I. 148).

lengthy suppression hearing has heard much regarding the background of this case in its judicial capacity.

Accordingly, the Court will deny defendant Sheeran's motion for disqualification.