In re Anthony R. MARTIN–TRIGONA.

**Anthony R. MARTIN–TRIGONA,**
**Plaintiff,**

v.

**Harold LAVIEN, Robert Krechevsky, Alan Shiff, Alan Nevas, Irving Perlmutter, Daniel Meister, Richard Belford, Richard Coan, Jon Schneider, Thomas Urmy, United States District Court, Defendants.**

**Misc. Civ. No. H 83–62.**
**Civ. No. H 83–305.**

United States District Court,
D. Connecticut.

July 1, 1983.

Anthony R. Martin-Trigona, pro se.

W. Philip Jones, Dept. of Justice, Washington, D.C., for Federal defendants (Judge Harold Lavien, Judge Robert L. Krechevsky, Judge Alan H.W. Shiff and U.S. Attorney Alan H. Nevas).

Laura L. Carroll, Goodwin, Procter & Hoar, Boston, Mass., for defendant Jon D. Schneider.

Richard Coan, Coan, Lewendon & Royston, New Haven, Conn., for Richard Belford, Trustee in Bankruptcy of Estate of Anthony R. Martin-Trigona.

Irving H. Perlmutter, Ullman, Perlmutter & Sklaver, New Haven, Conn., for Daniel Meister, Trustee in Bankruptcy of New Haven Radio, Inc.

Francis J. Wynne, Hartford, Conn., for Robert K. Killian.

Elliot B. Pasik, D'Amato & Lynch, New York City, for defendants Belford, Coan and Meister.

## RULING ON MOTION TO RECUSE [1]

JOSÉ A. CABRANES, District Judge:

Pending before me are all cases in the District of Connecticut (more than 50 in number), involving Anthony R. Martin-Trigona and New Haven Radio, Inc. ("New Haven Radio"), an asset in which Martin-Trigona claims an interest. Four of the cases filed by Martin-Trigona were assigned to me in the normal course in 1982. The rest came to my docket in early 1983 after the other judges in the District resolved that the litigation involving Martin-Trigona could best be administered by a single district judge; indeed, Martin-Trigona himself had urged the district judges to consolidate before me the litigation involving him. *See* Request for Transfer of Pending Bankruptcy Appeals and Related Civil Cases to Judge Cabranes (dated Oct. 27, 1982) by Martin-Trigona addressed to Judges Daly, Eginton and Burns. *See also, e.g.*, Order of Chief Judge T.F. Gilroy Daly (filed Jan. 11, 1983). Those cases include several against judicial officers of the District (including all active District Judges and both Bankruptcy Judges) and of other jurisdictions.

On June 15, 1983, Martin-Trigona conveyed to the court a document styled "Moción to Recuse Judge." That motion arrived by courier in chambers with a cover letter and was filed with the Clerk's Office on June 16, 1983. The motion and the letter urge that I recuse myself from the cases involving Martin-Trigona because, among other allegations, a partner of the attorney currently representing me in a personal matter once had some asserted connection with a case involving Martin-Trigona. The motion is opposed by all other participants in the action, including the United States Department of Justice, which seeks nationwide injunctive relief to stem the tide of litigation involving Martin-Trigona.

The case assertedly involving a lawyer recently retained by me in a personal matter is known as *New Haven Radio, Inc. v. Nicholas Bua*, Civil No. B 82–62 (D.Conn.). The *Bua* action was an appeal from the Bankruptcy Court to Judge Daly, who denied it; in a later proceeding, the Court of Appeals dismissed the further appeal to that court on April 27, 1983. *New Haven Radio, Inc. v. Nicholas Bua*, Dkt. No. 82–5032 (Notice of Appeal filed July 30, 1982, 2d Cir.). A certified copy of the order dismissing the appeal was filed in the Court of Appeals on May 9, 1983. It is a matter of record that the *Bua* case is closed. Martin-Trigona has attached to his motion as exhibits certain correspondence concerning Nicholas Bua, who was a trustee of the New Haven Radio bankruptcy estate at one time, and who was apparently represented by John H. Krick in December 1980. Mr. Krick's partner currently represents me in recently-commenced personal litigation having nothing to do with any of the Martin-Trigona litigation.

The pending motion to recuse further alleges that another law firm, which now represents my wife in a personal matter, some time ago (in December 1980) filed an action on behalf of private clients against "the debtor" (presumably Martin-Trigona or New Haven Radio), in Connecticut state

---

1. The court entered its ruling on the Motion to Recuse Judge (filed June 16, 1983), at a hearing held in open court and on the record on June 17, 1983, at which time the court also entered a ruling in written form. This revised version of the original ruling of June 17, 1983, which makes a number of editorial corrections and changes and supersedes the original ruling for all purposes, does not differ in substance from the ruling entered on June 17, 1983.

court. Attached to the motion to recuse as an exhibit is a copy of the complaint in that action, which apparently sought recovery from New Haven Radio for nonpayment of rent on office space in New Haven, Connecticut.

The motion also alleges that this court refused to accept the U.S. Attorney's efforts to dismiss an alleged criminal contempt charge and illegally sought to jail the debtor.[2] Finally, Martin-Trigona warns in his motion that "the debtors" planned to sue "all the law firms" and my wife (and, by implication, me) to bar this court from proceeding further because of the court's alleged "personal interest." Motion to Recuse Judge (filed June 16, 1983) at 4. Martin-Trigona on June 16, 1983 purported to serve me, my wife and a large number of Connecticut lawyers with papers suggesting the commencement of a lawsuit against us in the Supreme Court of the State of New York in New York County.

## I.

The pattern of Martin-Trigona's approach to litigation seems to involve admiration or respect, at least initially, for the judge to whom his cases are assigned. However, at the first sign of an adverse ruling by the judge who originally was the subject of Martin-Trigona's praise (if not neutrality), Martin-Trigona reverses course and files suit against the judge, the judge's family, his attorneys and anyone else within range.

This familiar pattern obviously has recurred in the cases that have come before me. Martin-Trigona strenuously argued in favor of the assignment to me of all cases arguably involving him and, in the absence of any rulings adverse to him, lauded me in various filings and at a hearing held in chambers and on the record on October 25, 1982. As usual, his change in attitude toward a judicial officer follows quickly on the heels of some action not in his favor and includes wild and irrelevant allegations based upon information said to have been newly discovered.

For example, as recently as May 17, 1983, Martin-Trigona addressed a letter to me in which he unequivocally exalted me as a judicial officer:

I have always obeyed lawful orders, respect you completely, trust you implicitly, and hope for justice from you. You need not despair of my cooperation ....

Finally, I want to inject a very personal note. During the depths of my de-

---

2. *See* Motion to Recuse Judge (filed June 16, 1983) at 3–4. Martin-Trigona apparently refers to pending criminal contempt charges certified and transferred to this court on May 10, 1983, pursuant to this District's Emergency Resolution for Administration of Bankruptcy System § (d)(1)(B), by United States Bankruptcy Judge Robert L. Krechevsky. Judge Krechevsky transferred two matters as criminal contempts amounting to an affront to the dignity and authority of the Bankruptcy Court. *See* Transfer of Matters by a Bankruptcy Court Judge to a District Court Judge (filed May 10, 1983) in *United States v. Anthony R. Martin-Trigona*, Crim.Misc. No. H 83–8. The two matters transferred involved (1) a transcript of proceedings before the Bankruptcy Court on April 21, 1983; and (2) a "Renewed Motion to Recuse Judge" dated May 1, 1983, presented by Martin-Trigona in open court on May 5, 1983. *Id.* ¶¶ 3, 4. This court, by order to show cause entered May 17, 1983, pursuant to Rule 42, Fed.R.Crim.P., appointed the United States Attorney for the District of Connecticut to prosecute the charges of criminal contempt against Martin-Trigona. On June 1, 1983, the United States Attorney filed the "Government's Response to Order to Show Cause" stating the Government's "belie[f]" that the "interests of justice will best be served by not pursuing the criminal contempt proceedings against Mr. Martin-Trigona at the present time[,]" and "suggest[ing]" to the court that the Order to Show Cause be dismissed without prejudice to the Government's right to institute criminal contempt proceedings against Mr. Martin-Trigona in the future.

In response to this apparent declination of appointment under Rule 42, the court appointed F. Mac Buckley, a member of the bar of this court, to act as prosecutor. The criminal contempt matter is pending. Also pending are matters arising out of certain findings of civil contempt of court by United States Bankruptcy Judge Alan H.W. Shiff, which are described in *Martin-Trigona v. Shiff*, 702 F.2d 380 (2d Cir.1983), and which the Court of Appeals remanded to the District Court for further action; these matters, and all other pending Martin-Trigona matters, were consolidated before me in early 1983 by order of Chief Judge T.F. Gilroy Daly, acting, in part, upon a request for consolidation made by Martin-Trigona.

pression, when many around me had lost hope of my survival, and the criminal conspiracy was succeeding, in November, 1981, I sat night after night in the lonely law library at Ashland, Kentucky reading cases to preserve my sanity in the face on [sic] insane treatment at the hands of the courts.

I chanced across *LaReau v. Manson,* 507 F.Supp. 1177 (D.Conn.1981 [sic]), aff'd as mod. 651 F.2d 96 (2d Cir.1981). I was immediately impressed by your thoroughness, your scholarship and your humanity. I prayed then that it might be possible to appear before you to resolve the tortures I was experiencing in the bankruptcy courts in Connecticut ....

Let your words be God's words; let your will be God's will. And let justice be done. My fate is in your hands.

The tone of his most recent correspondence and filings, including the motion to recuse, by contrast, can only be described as vexatious, wild, disrespectful and threatening. It is not, however, unusual in his career as a litigant in the nation's courts. The following passages from a recent letter to me reflect the general tenor of Martin-Trigona's filings in this and other courts:

I have conflicting emotions in this matter. In the abstract, I admire you. In terms of how I have been treated, you have trampled on the law, and I am disappointed. I know that if you persists [sic] in your stubborness [sic], you will only destroy yourself and your judicial career through *hubris* ....

In the crucible of battle, if it is my money against your career, God's will will prevail and strike you down for your blasphemous conduct in abusing me ....

There is no need for a hearing on Thursday, because anything you do will be void and reversible and embarass [sic] you. Please cancel everything and dismiss everything (my preference) or transfer everything (a second option which will still cause you some problems). Use common sense and self preservation.

God is telling you something. He is telling you that this lowly little radio station owner is a child of God, protected by God, and saved always by God. Wrong me, and you only wrong yourself. Wrong me, and hubris will destroy you, not me .... Stop, loosen up, be a *mensch,* as they say in Yiddish. Save my family, save me, save your family, save yourself further public embarassment [sic] by cancelling the hearing for Thursday. The quicker and quieter this mess is over, the better we will all be.

Letter of Anthony R. Martin-Trigona to Judge Cabranes dated June 14, 1983.

Judge Cabranes's personal law firm is thus 'up to its eyeballs' in proven conduct amoutning [sic] to criminal conduct, bankruptcy fraud, and theft of money from the debtor in possession . . . .

Motion to Recuse Judge (filed June 16, 1983) at 2.

The debtors will be seeking legal redress from the obvious pattern of fraud, conflict of interest, and abuse of the judicial power by the court, its family, and a series of law firms connected by common bonds of greed and religion, all who [sic] are trying to loot the debtors and to illegally jail the debtors.

*Id.* at 4. *See In re Martin-Trigona,* 573 F.Supp. 1245, 1263 (D.Conn.1983) (various anti-Jewish attacks).

The general style of Martin-Trigona's personality was described by the United States Court of Appeals for the Seventh Circuit, *Martin-Trigona v. Underwood,* 529 F.2d 33, 34 (7th Cir.1975) (per curiam), which quoted a psychiatric evaluation that Martin-Trigona has " 'a moderately-severe character defect manifested by well documented ideation with a paranoid flavor and grandiose character.' " The public record of his activities in the courts indicates no reason to doubt the continued accuracy of that description. *See, e.g., Martin-Trigona v. Gouletas,* 634 F.2d 354, 362 (7th Cir.) (per curiam), *cert. denied,* 449 U.S. 1025, 101 S.Ct. 593, 66 L.Ed.2d 486 (1980) (noting Martin-Trigona's "tendency ... to exaggerate, to believe himself the victim of conspiracies where none exist, and to suspect without any reasonable basis that others are persecuting him ....").

## II.

### 28 U.S.C. § 455

Construing the motion to recuse as a motion filed pursuant to 28 U.S.C. § 455,[3] the court finds that in the totality of the circumstances, and in the exercise of the court's discretion under that statute, recusal is not appropriate in this instance.

It is well documented in this district and in courts around the country that Martin-Trigona has attempted, through a pattern and practice of suing judges and making irrelevant and unfounded allegations about them and their families, to clog the legal system by filing countless costly and time-consuming documents which obscure the issues and place extraordinary burdens on the parties, the attorneys and the judges (who are often the subject of Martin-Trigona's motions for recusal). *See, e.g., Martin-Trigona v. Gouletas, supra,* 634 F.2d at 355 n. 1 (denying motion by Martin-Trigona to recuse all judges of the Seventh Circuit). Bankruptcy Judge Lavien of the District of Massachusetts has already denied a similar motion for recusal, laced with similar allegations about family, religious and professional associations:

It may be that Mr. Martin-Trigona, recognizing his legal and factual problem, is attempting by his wild accusations of venal conduct on the part of all the lawyers, trustees, and bankruptcy judges involved in the administration of the estates in both Massachusetts and Connecticut, in the words of former Justice Jackson, to pound loudly on the table in the hope that if he becomes enough of a problem, that by either intimidation or weariness, he may accomplish some part of his purpose. Since he is already in bankruptcy, what does he have to lose? The result is that the accusations increase, the motions, pleadings, complaints, and suits multiply, courts and lawyers are buried in mountains of time-consuming paper. If there is one truth, it is that the estate will be bled white by the costs and legal fees engendered by his "crusade."

*In re WHET, Inc.,* 33 B.R. 424, 434 (Bkrtcy.D.Mass.1983). *See also id.* at 434 n. 21 (quoting Martin-Trigona's statement at oral argument, "You [*i.e.,* the court] will go to bed at nights saying I wish that Martin-Trigona case would go away.").

 Martin-Trigona has purportedly filed a lawsuit naming, *inter alia,* my wife and me and the law firms which represent us in personal matters, in the Supreme

---

3. 28 U.S.C. § 455 provides in pertinent part: Disqualification of justice, judge or magistrate (a) Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
(b) He shall also disqualify himself in the following circumstances:
(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
(2) Where in private practice he served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;
(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;
(4) He knows that he, individually, or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
(i) Is a party to the proceeding, or an officer, director, or trustee of a party;
(ii) Is acting as a lawyer in the proceeding;
(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;
(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.
(c) A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.

Court of the State of New York, New York County. It is not clear at this time whether that purported lawsuit has been properly filed and commenced and whether the apparent parties defendant have been properly served. However, it *is* clear that a judge is not disqualified under 28 U.S.C. § 455 (or under 28 U.S.C. § 144[4] for that matter) merely because a litigant sues or threatens to sue him. *United States v. Grismore*, 564 F.2d 929, 933 (10th Cir. 1977), *cert. denied*, 435 U.S. 954, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978). Neither is a litigant's intemperate and scurrilous attack on a presiding judge a valid ground for recusal. *Id.* Similarly, any tenuous connection of a judge to a lawyer who has represented or dealt with a litigant in a case before that judge does not automatically disqualify the judge. *See, e.g., Pesslin v. Keeneland Ass'n*, 274 F.Supp. 513, 514 (E.D.Ky.1967). There is an obligation on the part of a judge to decline to recuse himself for a "relatively trivial reason." *Id.* "It is a judge's duty to refuse to sit when he is disqualified but it is equally his duty to sit where there is no valid reason for recusa[l]." *Id.*

■ The right to an impartial judge cannot be advanced so broadly as to permit the parties to engage in "judge-shopping" under the guise of a motion to recuse, *see, e.g., United States v. Boffa*, 513 F.Supp. 505, 508 (D.Del.1981); *In re Parr*, 13 B.R. 1010, 5 C.B.C.2d 1039, 1047 (E.D.N.Y.1981), or to permit a litigant to disqualify without reasonable grounds a succession of judges for the apparent purpose of impeding the administration of justice.

■ 28 U.S.C. § 455 as amended establishes an objective standard for recusal, known as the "appearance of justice" rule. *In re IBM Corp.*, 618 F.2d 923, 929 (2d

Cir.1980). The appropriate test for disqualification under § 455(a) is whether a reasonable person with knowledge of all the facts would be led to the conclusion that the judge's impartiality might reasonably be questioned. *See, e.g., Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1111 (5th Cir.), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980). On this record, the allegations in Martin-Trigona's motion to recuse do not meet this standard of reasonableness. The allegations in the motion concerning three-year-old contacts between Martin-Trigona and certain attorneys in litigation opposing Martin-Trigona or companies with which he was associated (litigation that has never been before me) are simply too tenuous and incredible to create even the appearance of impropriety. A reasonable person—the proverbial average person on the street with knowledge of all the facts and circumstances alleged in the motion to recuse, *Potashnick, supra*, 609 F.2d at 1111, and of the legal representation of my wife and me—would not question my ability to sit impartially on the Martin-Trigona cases now before this court.

■ In any event, even assuming that a judge should always err on the side of caution and always disqualify himself in any case raising "a close question," *id.* at 1112, this is not such a case. The appearance of partiality test is one of reasonableness; it does not require recusal in response to spurious or vague charges of partiality. *Smith v. Pepsico, Inc.*, 434 F.Supp. 524, 525 (S.D.Fla.1977).

### III.

### 28 U.S.C. § 144

Even if it is assumed that the motion to recuse, which cites no particular statute, is

---

4. 28 U.S.C. § 144 provides:

Bias or prejudice of judge

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

brought under 28 U.S.C. § 144, the motion is (1) procedurally defective on its face and (2) otherwise legally insufficient.

Under § 144, a judge must recuse himself whenever a party to a proceeding before him files a timely and sufficient affidavit that the judge has a personal bias or prejudice against him or in favor of any adverse party.

The judge against whom the § 144 affidavit is filed must pass first on the legal sufficiency of the facts alleged in any such affidavit and on its timeliness. *United States v. Boffa, supra,* 513 F.Supp. at 508–509. In passing on the grounds of personal bias and prejudice, the facts alleged in the affidavit must be accepted as true. The judge may not question either the truth of the allegations or the good faith of the affidavit, even if the judge knows to a certainty that the allegations of personal prejudice are false. *Id.* at 509. Accordingly, a facially proper motion made pursuant to § 144 may have far more disruptive effect on judicial administration than does a similar motion made pursuant to § 455. Correspondingly, the threshold procedural requirements of § 144 are not liberally construed. In particular, the explicit requirement of an affidavit cannot be ignored.

It is clear that Martin-Trigona filed no affidavit as required under § 144, and therefore no relief under § 144 is available to him. *United States v. Sibla,* 624 F.2d 864, 868 (9th Cir.1980). Where no timely and sufficient affidavit is filed, the failure to follow these procedural requirements defeats the charge of bias. *United States v. Azhocar,* 581 F.2d 735, 738 (9th Cir.1978), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979). In any event, under § 144 recusal is not automatic upon the filing of an affidavit. The presiding judge may determine the facial sufficiency of the affidavit in the first instance. *Id.* at 738.

Moreover, the motion to recuse would be defective under § 144 for another reason. The motion to recuse must not only be filed promptly after the facts forming the basis for disqualification become known, and be filed with an affidavit stating the facts and reasons for the assertion of bias, but also it must be accompanied by a certificate signed by counsel of record that the motion to recuse is made in good faith. *See, e.g., United States v. Baker,* 441 F.Supp. 612, 616 (M.D.Tenn.1977). It is noteworthy that neither of the two eminent members of the bar of this court who were appointed to represent Martin-Trigona in civil contempt proceedings arising from these actions has filed any certificate of good faith in support of Martin-Trigona's motion to recuse, and Martin-Trigona has filed none *pro se.* It is clear that failure to follow the procedural requirements of § 144 will defeat the motion to recuse. *United States v. Anderson,* 561 F.2d 1301, 1303 (9th Cir.) (per curiam), *cert. denied,* 434 U.S. 943, 98 S.Ct. 438, 54 L.Ed.2d 304 (1977).

Finally, the motion, even if read as having been filed under § 144, is defective because it is untimely. One seeking recusal must do so at "the earliest moment" after he obtains the knowledge that forms the basis for the motion. *United States v. Kelly,* 519 F.Supp. 1029, 1050 (D.Mass.1981).[5] In this case, Martin-Trigona indicated in a hearing held in open court and on the record on June 3, 1983, *inter alia,* that if the court did not take certain actions on his cases, the court would suffer some sort of embarrassment. He intimated that he might engage in a "fight" with the court. *See* Certified Official Transcript of Hearing Held June 3, 1983 (filed June 8, 1983), at 73–76. After the court continued with the matters scheduled and properly notified all parties of projected hearings and further proceedings, Martin-Trigona did not file his motion to recuse until June 15, 1983. It must be presumed, in these

---

5. Our Court of Appeals has held that the timeliness requirement of § 144 also applies to § 455, which does not specifically include such a provision. *In re IBM Corp., supra,* 618 F.2d at 932. Thus, the motion is untimely under § 455 as well.

circumstances, that Martin-Trigona had some knowledge of what this alleged "embarrassment" or "fight" involved as early as June 3, 1983, and that he deferred filing of his motion until shortly before the court heard arguments on major motions (aimed at stopping his form of harassment-by-litigation) so that he could deduce how the court would rule or use the threat of a motion to recuse in order to embarrass or intimidate the court. Accordingly, the motion would be untimely under § 144 (and indeed, under § 455).[6] *See United States v. Conforte,* 457 F.Supp. 641, 653–654 (D.Nev.1978), *aff'd,* 624 F.2d 869 (9th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980). The purpose of a timeliness requirement for the assertion of claims of personal bias is to prevent a litigant from using motions to disqualify as dilatory tactics or as means to "sample the temper of the court" before deciding whether to raise an issue of disqualification, *id.* at 654 n. 7 (citation omitted), or to ambush a court that is on the verge of acting—possibly to his detriment—on matters he deems important.

### Conclusion

For the reasons stated above, the court denies the motion to recuse regardless of whether the motion is construed as one filed under 28 U.S.C. § 455 or under 28 U.S.C. § 144. Accordingly, although the court has duly considered the Motion to Strike Motion to Recuse Judge Cabranes, filed June 17, 1983 by counsel for the Trustee of New Haven Radio, Inc., in considering Martin-Trigona's motion to recuse, the Motion to Strike is denied as moot.

It is so ordered.

---

6. *See* note 5 *supra* and accompanying text.