**In re Frank M. BYERS, III, Debtor.**

No. 07–59297.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Signed April 10, 2014.

Entered April 11, 2014.

Amy Elizabeth Gullifer, Cannizzaro, Bridges, Jillisky & Streng, Marysville, OH, for Debtor.

### ORDER DENYING CREDITOR PATRICIA A. BYERS' MOTION FOR RECUSAL OF JUDGE C. KATHRYN PRESTON

C. KATHRYN PRESTON, Bankruptcy Judge.

This cause has come on for consideration of the Creditor Patricia A Byers' Motion for Recusal of Judge C. Kathryn Preston (Doc. # 260) and the affidavit filed in support thereof (Doc. # 261) (the "Motion"). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and General Order No. 05–02, entered by the United States District Court for the Southern District of Ohio, referring all bankruptcy matters to this Court.

This is the latest skirmish in an ongoing battle between the debtor, Frank M. Byers III (hereinafter, "Debtor"), and his former wife, Patricia A Byers (hereinafter, "Ms. Byers"). Ms. Byers asserts that the judge assigned to this case should recuse herself on the basis that she has a conflict of interest in this case arising from her former employment with The Huntington National Bank. Ms. Byers also asserts that the judge has displayed personal bias against her.

In her Motion, Ms. Byers has engaged in such a vehement and scurrilous attack on the judge, that it is tempting to recuse if only to escape Ms. Byers' vitriol. However, an appointed judge has a responsibility to preside over the cases which are assigned to her, and cannot simply recuse herself in order to ease her burden. *In re Nat'l Union Fire Ins. Co.*, 839 F.2d 1226, 1229 (7th Cir.1988) ("Judges have an obligation to litigants and their colleagues not to remove themselves needlessly, be-

cause a change of umpire in mid-contest may require a great deal of work to be redone ... and facilitate judge-shopping." (citation omitted.)); *United States v. Pungitore*, 15 F.Supp.2d 705, 715 n. 4 (E.D.Pa. 1998) ("A liberal recusal policy would encourage judge shopping."); *Scott v. Pryor (In re Chandler's Cove Inn, Ltd.)*, 74 B.R. 772, 773 (Bankr.E.D.N.Y.1987) ("[R]ecusal motions which are too liberally granted are tantamount to unilateral 'judge shopping' and may be used for a delaying tactic, for their disposition requires a serious investment of judicial time and thought.").

## I. Applicable Law.

Defendant has moved for recusal pursuant to two statutes: 28 U.S.C. § 144 and 28 U.S.C. § 455.

28 U.S.C. § 144 states in pertinent part: "Whenever a party to any proceeding *in a district court* makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding." 28 U.S.C.A. § 144 (emphasis added).

■ It is well established that 28 U.S.C. § 144 does not apply in bankruptcy court. The statute's express language so provides. As Judge Hoffman of this Court has noted, "There is a substantial body of case law holding that 28 U.S.C. § 144 applies only to district court judges and does not govern motions for recusal of a bankruptcy judge...." *Barna v. Haas (In re Haas)*, 292 B.R. 167, 175 (Bankr.S.D.Ohio 2003). This interpretation of the statute is grounded in the history of the bankruptcy court, which was formerly overseen by a referee, not a judge. As such, bankruptcy court was compared to the circuit court of appeals, appellate tribunals, and territorial

courts which also are not subject to 28 U.S.C. § 144. *See Ginger v. Cohn*, 255 F.2d 99, 100 (6th Cir.1958). Although the judges now preside over the bankruptcy courts, this decision by the Sixth Circuit Court of Appeals remains applicable for the same reason.

Federal Rule of Bankruptcy Procedure 5004 provides that "[a] bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualified circumstance arises or, if appropriate, shall be disqualified from presiding over the case." Fed. R. Bankr.P. 5004(a). Ms. Byers has invoked the following provisions of 28 U.S.C. § 455:

(a) Any justice, judge, or magistrate [magistrate judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter....

28 U.S.C. § 455(a)–(b)(2).

■ Whereas the statute mandates recusal when grounds articulated by the statute exist, "there is a corresponding duty not to do so if cause for recusal has not been shown." *Haas*, 292 B.R. at 175 (citation omitted). "The standard for determining whether a judge should be disqualified is an objective one: whether a reasonable person with knowledge of all facts would conclude that the judge's im-

partiality might reasonably be questioned." *Id.* at 177 (citation omitted).

## II. Discussion.

### A. Timeliness of the Motion.

■ At the outset, the Court must observe that Ms. Byers' Motion is likely untimely. This case is almost at its twelfth hour: the Chapter 13 Plan has been consummated, the Chapter 13 Trustee has filed his Certification of Final Payment and Case History (Doc. # 200), Debtor has filed his Financial Management Course Certificate (Doc. # 184) and his Debtor's Certification Regarding Issuance of Discharge Order (Doc. # 185), and the Discharge (Doc. # 201) has been entered. The only impediments to closing this case are various motions filed by Ms. Byers (all filed after entry of the Discharge).

■ Generally, a motion for recusal must be made "at the earliest possible moment" after the movant becomes aware of possible bias. *United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 183 (2d Cir. 1991) (quoting *Apple v. Jewish Hosp. & Md. Ctr.*, 829 F.2d 326, 333 (2d Cir.1987)). Even brief delay can result in denial for untimeliness. *Apple*, 829 F.2d at 334 (holding that delay of two months after movant learned of facts allegedly requiring recusal rendered motion untimely); *Datagate, Inc. v. Hewlett–Packard Co.*, 941 F.2d 864, 871–72 (9th Cir.1991) (delay of six weeks rendered motion untimely), *cert. denied*, 503 U.S. 984, 112 S.Ct. 1667, 118 L.Ed.2d 388 (1992); *United States v. Int'l Bhd. of Teamsters*, 814 F.Supp. 1165, 1172 (S.D.N.Y.1993) (delay of two months rendered motion untimely); *Martin–Trigona v. Lavien (In re Martin–Trigona)*, 573 F.Supp. 1237, 1244–45 (D.Conn.1983) (delay of 12 days), *appeal dism'd*, 770 F.2d 157 (2d Cir.1985), *cert. denied*, 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986). Ms. Byers states in the Motion

that she became aware of the grounds for her Motion in 2012. Motion, Doc. # 260, p. 3. Ms. Byers filed her Motion over a year later, on March 27, 2014. Notwithstanding, inasmuch as Ms. Byers has filed numerous other motions which must be resolved, the Court will address the merits of the Motion.

### B. Recusal Pursuant to 28 U.S.C. § 455(b)(2).

■ Ms. Byers first invokes 28 U.S.C. § 455(b)(2), demanding recusal due to the judge's previous employment with The Huntington National Bank (hereinafter, "Huntington"). Section 455(b)(2) provides that the assigned judge must disqualify himself if, while in private practice, "he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served ... as a lawyer concerning the matter...." 28 U.S.C. § 455(b)(2).

Ms. Byers asserts that (1) while in the employ of Huntington, the assigned judge represented stockholders of Huntington, including Byers Holdings Inc., which owned a substantial amount of stock in Huntington Bancshares Incorporated ("HBI"), the parent company of Huntington; and (2) that the assigned judge was employed by Huntington in the commercial lending department, and in that capacity provided legal counsel to Debtor and/or Huntington in connection with a loan that Debtor obtained from Huntington's commercial loan department.

Ms. Byers' basic premises are false. While employed by Huntington, the assigned judge worked alternatively as an attorney in the Legal Department and manager of the Special Assets Department. She never worked in the commercial lending department in any capacity. As an attorney with the Legal Department,

her duties were to represent Huntington in various matters. She did not represent any of its stockholders. The assigned judge had no knowledge of Debtor's or Byers Holdings' relationship with Huntington, never met Debtor or any of the Byers family, and never reviewed any of their loans. While in the Special Assets Department of Huntington, the judge managed a staff of bank officers who supervised commercial loans that had fallen into default or which the bank feared would ultimately default due to adverse financial circumstances of the borrower. No loans related to Debtor or Byers Holdings or related entities were supervised by the Special Assets Department.

An assigned judge is only required to recuse if the judge represented one of the parties in the "matter in controversy." In the present case, the matters in controversy are disputes between Ms. Byers and Debtor. Huntington is not a party to the matters in controversy; in fact, Huntington has not been a party to any contested matter or adversary proceeding in this case. Thus, § 455(b)(2) is not implicated, and Ms. Byers' reliance on that statute is misplaced.

**C. Recusal Pursuant to 28 U.S.C. § 455(a) and (b)(1).**

 Relying on § 455(a) and (b)(1), Ms. Byers next asserts personal bias and a conflict of interest on the part of the judge, compelling recusal. Those provisions of § 455 provide that the judge must disqualify herself if "(a) ... [her] impartiality might reasonably be questioned [or] (b) ... (1) Where [she] has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts

concerning the proceeding...." 28 U.S.C. § 455(a), (b)(1). When arguing bias, two sets of circumstances present grounds for a judge to recuse herself: the "Extrajudicial Source Factor,"[1] and the "Pervasive–Bias Exception."

**i. Extrajudicial Source Factor.**

 To prevail on her Motion under 28 U.S.C. § 455(a), Ms. Byers must demonstrate an alleged bias that "stem[s] from an extrajudicial source and result[s] in an opinion on the merits on some basis other than what the judge learned from [her] participation in the case." *Youn v. Track, Inc.,* 324 F.3d 409, 423 (6th Cir. 2003) (citing *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966)). Extrajudicial conduct encompasses only "personal bias as distinguished from a judicial one, arising out of the judge's background and association and not from the judge's view of the law." *Id.* The focus of 28 U.S.C. § 455(a) is on the objective appearance of bias and not on the subjective view of the party filing the motion. *Browning v. Foltz,* 837 F.2d 276, 279 (6th Cir.1988). As have almost all of the United States Circuit Courts, the Sixth Circuit Court of Appeals has expressly stated, "[T]he standard is an objective one; hence, the judge need not recuse himself based on the 'subjective view of a party' no matter how strongly that view is held." *United States v. Sammons,* 918 F.2d 592, 599 (6th Cir.1990) (quoting *Browning v. Foltz,* 837 F.2d 276, 279 (6th Cir.1988), *cert. denied,* 488 U.S. 1018, 109 S.Ct. 816, 102 L.Ed.2d 805 (1989)).

 Ms. Byers insists an extrajudicial source exists in that the judge developed a

---

1. Courts typically refer to the theory as the "Extrajudicial Source Doctrine", but the Supreme Court has expressed preference for use of the term "factor" in connection with an extrajudicial source. *Liteky v. United States,* 510 U.S. 540, 554–55, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

personal relationship with Debtor at the time of her employment with Huntington. As explained above, the judge has never met Debtor or any member of his family, and has no such relationship with Debtor or any person or entity related to him.

Additionally, Ms. Byers posits that Debtor has a direct or indirect interest in HBI [2] and the assigned judge has a conflict of interest by virtue of having been employed by Huntington before taking the bench. But Ms. Byers fails to illustrate how these facts reflect a conflict of interest and how these facts are prejudicial to her interests. Simply put, the interests of Debtor or Byers Holdings in HBI do not present a conflict of interest for the assigned judge. The assigned judge has no interest in HBI, and has not had any interest in HBI since 2005. Any connection that Ms. Byers attempts to illustrate between the assigned judge and Debtor is too remote to support a finding of a conflict of interest. Certainly a reasonable person would see no basis for disqualification based on the facts alleged by Ms. Byers.

### ii. Pervasive Bias Exception.

■■■ The Pervasive Bias Exception is available "when a judge whose information is limited to that revealed during the course of judicial proceedings forms a favorable or unfavorable opinion so extreme that fair judgment appears impossible." *Haas*, 292 B.R. at 177.

■■■ The United States Supreme Court has emphasized that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

*Liteky* involved a motion to disqualify the district judge pursuant to 28 U.S.C. § 455 based on events that had occurred during and immediately after a trial in a previous case involving the petitioner before the same district judge. The Court held that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for bias or partiality." *Id.*

> [J]udicial rulings and "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings" almost "never constitute a valid basis for a partiality motion." Likewise, judicial remarks that are "critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge."
>
> . . . .
>
> The high bar set by [the Supreme Court in] *Liteky* for predispositional recusals makes good sense. If it were otherwise—if strong views on a matter were disqualifying—then a judge would hardly have the freedom to be a judge.

*Belue v. Leventhal*, 640 F.3d 567, 573 (4th Cir.2011) (quoting *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)). Thus, a motion for recusal based on opinions formed by the judge will not be granted unless "they display a *deep-seated favoritism or antagonism* that would make fair judgment impossible." *Liteky*, 510 U.S. at 555, 114 S.Ct. 1147 (emphasis added).

---

**2.** Ms. Byers' allegations are unclear regarding the extent of Debtor's interest in HBI. At various points in the Motion, Ms. Byers alternatively suggests that Debtor owns HBI stock, that Debtor is a stockholder of Byers Hold- ings Inc., which owns HBI stock, and/or that Debtor is a beneficiary of one or more trusts which own(s) stock of Byers Holdings Inc., which in turn owns HBI stock.

■ When a party files a motion, it is the responsibility of the court to assess the motion and decide the issues presented by the motion. The Supreme Court has gone so far as to hold that opinions held by judges as a result of what they learned in earlier proceedings are not even subject to the characterization as "bias" or "prejudice". *Liteky*, 510 U.S. at 551, 114 S.Ct. 1147.

■ Moreover, it is standard practice for the judge assigned to a bankruptcy case to sit for all related contested matters and adversary proceedings. Every matter that goes to hearing or trial ends in a decision adverse to one of the parties. It would be an anomalous result for the judicial system to assign all related matters to one judge, then require his recusal after he rules in one of the matters. Thus, an adverse decision alone cannot be assumed to detract from the judge's impartiality. On this point, the Supreme Court observed in *Liteky* that after reversal of a decision on appeal, it is "normal **and proper** for a judge to sit in the same case upon remand, and to sit in successive trials involving the same defendant." *Liteky*, 510 U.S. at 551, 114 S.Ct. 1147 (emphasis added).

■ Attempting to coerce the assigned judge's recusal, Ms. Byers recites a lengthy list of perceived omissions, commissions and affronts, most of which are misplaced, misconstrue the facts or the law, or are simply incorrect.[3] A sampling:

(1) Ms. Byers claims that, at hearings held on April 17, 2008 and July 28, 2008, the judge refused to allow her to present evidence in support of her motion to dismiss this case and her objection to confirmation of Debtor's Chapter 13 Plan. In fact, the hearing in April 2008 was a pretrial conference, not a evidentiary hearing or a trial, and Ms. Byers withdrew her motion to dismiss before the trial date in July 2008. Then, apparently in the alternative, Ms. Byers argues that the Court denied her motion to dismiss this case and her objection to confirmation of Debtor's Plan. As stated, she withdrew the motion to dismiss and the objection to confirmation. *See* Doc. # 88.

(2) Ms. Byers claims that the Court denied her motion for relief from the automatic stay. In fact, she never filed a motion for relief from the stay. Ms. Byers did, however, object to Debtor's motion to extend the automatic stay pursuant to 11 U.S.C. § 362(c)(3). In the context of Debtor's motion, she entered into an agreed order which *granted* her limited relief from the stay to proceed with certain domestic relations matters in state court.

(3) Ms. Byers points out that the court discharged her "DSO" and her property settlement claims against Debtor. In fact, there has been no adversary proceeding commenced to determine the nature of or the dischargeability of any obligation owed to her by Debtor.[4] In

---

**3.** Many of Ms. Byers' allegations, even if true, are simply irrelevant to the Motion. For instance, Ms. Byers asserts that the United States Attorney General has a conflict of interest in the case, that the Court discharged Debtor's obligations to the Internal Revenue Service, that there was collusion of some sort between Debtor and Huntington, and that the judge "allowed [Huntington] to change the loan to appear that Frank Byers Jr [Debtor's father] held the lien to [certain] assets". Mo-

tion, Doc. # 260, p. 18. The Court is at a loss to discern how such facts would have a bearing on the Motion.

**4.** While Ms. Byers asserts that Debtor owes a domestic support obligation ("DSO") to her, she filed only one proof of claim, designated claim no. 4 by the clerk of court, in which she described the debt as a property settlement.

the absence of such a determination, the Bankruptcy Code, not the Court, establishes the parameters of the discharge under Chapter 13. *See* 11 U.S.C. § 1328.

(4) Ms. Byers claims that at the hearing on July 22, 2008, the Court made "statements [that] the Court took offense to [Ms. Byers'] appearance in the bankruptcy, because it was a forum of business wherein [Ms. Byers] had no formal education or knowledge of bankruptcy proceedings. The Court also stated [that Ms. Byers] should stay home and trust the bankruptcy judge because of her expertise in business affairs, and to take care of her sick daughter." Motion, Doc. # 260, p. 11. In fact, no such statements were made by the Court or anyone else at the July 2008 hearing. In actuality, in response to her question, the Court advised Ms. Byers that, as a party in interest, she could attend a hearing scheduled for determination of Debtor's good faith.[5] Further, the Court made sure that Ms. Byers understood that neither the Court nor the Trustee would be representing her or her interests in future proceedings held by the Court.

(5) Ms. Byers alleges that Debtor and Frank Byers, Jr. (Debtor's father) claim that they "paid" for the judge's appointment to the bench or that she was "placed on the Bankruptcy bench by the Byers through [Huntington]." Affidavit of Ms. Byers, Doc. # 261, p. 8. Ms. Byers neither provides nor alleges the existence of any proof of such a scandalous fact. The Court, of course, has no control over what Debtor or anyone else may say, and simply making such statements, while offensive to the Court, does not make such facts true.

While it is tempting to address more of Ms. Byers' concerns, it would serve little purpose. The various complaints and allegations by Ms. Byers do not illustrate bias by the judge which warrant recusal.

Ms. Byers goes on to point to other rulings actually made by the Court, continuing her theory that they demonstrate bias against her inasmuch as the rulings are adverse to her interests:

(1) Ms. Byers complains that the Court imposed sanctions on her. This is true: the Court did impose sanctions, for her failure to comply with discovery and previous order of court. *See* Doc. # 88.
(2) Ms. Byers complains that the Court denied her motion to have transcripts of hearings prepared. This is true: as explained in the order, transcripts are not requested by motion but rather by contacting the clerk of court with the request, and payment of the required fees.

As discussed above, adverse rulings by the Court do not constitute a basis for recusal unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. The Court's rulings in this case were not so unfavorable that fair judgment appears impossible. The Court's assessment of and rulings on the subject motions were not extraordinary measures which would lead a reasonable person, knowing all the facts, to believe that the assigned judge has formed an opinion so extreme that fair judgment appears impossible, or that the judge is unduly biased against Ms. Byers. The rulings do not reveal any favoritism or antagonism but rather are simply disposing of the motions, as the Court is required to do.

This Court also observes that recusal under circumstances presented by this case would result in dangerous precedent

---

5. Ms. Byers did not attend that hearing.

in the Bankruptcy Court system. To interpret the statute as liberally as Ms. Byers desires would create a system whereby parties in proceedings before the Bankruptcy Court could demand recusal by a judge who rendered any adverse ruling or when someone makes spurious statements regarding the court or the judge (or a party claims that spurious statements are made by another party). The Bankruptcy Court system would become bogged down with recusal motions and scheduling conflicts, allowing parties to cause unnecessary delay or to "judge-shop" to select who would hear their case.

## III. Conclusion.

Ms. Byers having failed to illustrate an extrajudicial source factor or pervasive bias compelling disqualification of the assigned judge, it is ORDERED that the Motion for Recusal of Judge C. Kathryn Preston (Doc. # 260) is DENIED.

IT IS SO ORDERED.