W. Larry HUNT, as a Receiver of Life Insurance Company of America, Plaintiff-Appellant,

v.

AMERICAN BANK & TRUST COMPANY OF BATON ROUGE, LOUISIANA; Rolfe H. McCollister; George E. McNutt, Jr.; Robert A. Holloway; Donald A. Hayden; Karl E. Rodriquez; Sam Gallo; and Calvin Wilson, Defendants-Appellees.

No. 85–7425.

United States Court of Appeals, Eleventh Circuit.

March 3, 1986.

J. Gusty Yearout, Yearout, Hardy & Myers, Deborah S. Braden, Birmingham, Ala., for plaintiff-appellant.

Caine O'Rear, III, W. Ramsey McKinney, Jr., Mobile, Ala., for American Bank.

Karon O. Bowdre, Rives & Peterson, Clarence M. Small, Jr., Birmingham, Ala., for all other appellees except Calvin Wilson.

Before VANCE, Circuit Judge, HENDERSON [*], Senior Circuit Judge, and LYNNE [**], Senior District Judge.

PER CURIAM:

Appellant Hunt, acting as receiver of Life Insurance Company of America (LICA), brought claims under RICO, 18 U.S.C. §§ 1961 to 1968, Securities Exchange Act § 10(b), 15 U.S.C. § 78j(b), SEC rule 10b–5 and state common law against defendants for allegedly engaging in fraudulent transactions that depleted LICA's assets. The district court, 606 F.Supp. 1348, dismissed Hunt's complaint, finding that

---

[*] See Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

[**] Hon. Seybourne H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

the securities and common law fraud counts were barred by the statute of limitations and that the RICO counts failed to state a claim. Although we find that Hunt otherwise stated a valid RICO claim under the Supreme Court's recent decision in *Sedima, S.P.R.L. v. Imrex Co.,* ——— U.S. ———, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), we conclude that this entire action, including the RICO counts, is time barred. Thus, we affirm.

### I.

Hunt's claims are based on three separate transactions alleged to have been fraudulent: the Calvin Wilson, Advanced Education and TransAmerican transactions. All three took place in the mid-1970's. The former two have been the subject of litigation before: they were among various incidents of fraud alleged in two 1976 lawsuits against LICA and several of the individual defendants in this case.

The Alabama Department of Insurance, charged with regulating LICA, knew about all three transactions and the lawsuits no later than the end of 1977. In early 1978, the department conducted an examination of LICA. Alabama's attorney general and its securities commission also investigated the company. On December 15, 1978, the department placed LICA into receivership. As required by state law, the chief of the department's receivership division, then Charles Crawford, was appointed receiver. Appellant Hunt succeeded Crawford as receivership chief and took over as receiver for LICA in January 1980. Hunt filed the original complaint in this action, dealing solely with the Calvin Wilson transaction, on April 22, 1981. He amended the complaint on May 2, 1983 to add counts dealing

with the TransAmerican and Advanced Education transactions and the first of the two RICO counts. The second RICO count was added in 1984.

### II.

Hunt contends that the district court erred in holding that the common law fraud and federal securities fraud claims were brought after the expiration of the respective limitations periods of one year for the state claims, *see* Ala.Code. § 6–2–39 (repealed Jan. 9, 1985),[1] and two years for the federal claims, *see White v. Sanders,* 650 F.2d 627, 629 (5th Cir. Unit B 1981); Ala. Code § 8–6–19(e).[2] He argues that the periods did not begin to run until such time as either he or the original receiver, in the exercise of due diligence, should have discovered the fraud, and that there is a question of fact as to when that time came. Defendants argue, on the other hand, that the periods began to run no later than December 15, 1978—the date the original receiver was appointed—since the receiver, as chief of the insurance department's receivership division, had at least complete access to the department's information concerning the three transactions in question.

■ We need not determine precisely when the limitations period began to run, for we conclude that even under Hunt's standard his claims were filed too late. At the time the original receiver was appointed, the insurance department already knew of the Calvin Wilson and Advanced Education transactions, and also knew that these two transactions had been alleged to have been fraudulent. Even if the receiver could not have been expected to discover the causes of action involving these trans-

---

1. Since this suit was filed the limitations period applicable to the state claims has been increased to two years. *See* Ala.Code § 6–2–38 (effective Jan. 9, 1985). The longer period would not affect our decision.

2. Appellee American Bank argues that despite our holding in *White* applying Alabama's two-year limitations period for state blue sky actions to federal securities actions the one-year common law fraud period should be applied here

because this particular securities action could not have been brought under the state securities laws. Our decision in *White,* however, was based on the *general* similarity of blue sky actions in Alabama to actions brought under Securities Exchange Act § 10(b) and SEC rule 10b–5; it did not focus on the nature of the particular cause of action at hand. *See also infra* note 4 (discussing *Wilson v. Garcia,* ——— U.S. ———, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)).

actions instantaneously upon appointment, we conclude that as a matter of law the receiver should have been able to turn up information from his own department's files by April 21, 1979—more than four months after his appointment.

 Although the insurance department knew of the TransAmerican transaction in 1978, there is no evidence that the department had reason to suspect at that time that it was fraudulent. Nevertheless, the counts concerning that transaction are time barred for a different reason. They were added to Hunt's original complaint on May 2, 1983—more than four years after the appointment of the first receiver—and since they concern a separate incident of fraud they do not relate back to the date of the original complaint. *See Woods Exploration & Producing Co. v. Aluminum Co.*, 438 F.2d 1286, 1299–1300 (5th Cir. 1971), *cert. denied*, 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972); Fed.R.Civ.P. 15(c). We do not doubt Hunt's contention that he did not become aware of the Trans-American activities until the spring of 1983. Hunt himself, however, acknowledges that what matters is not when the information was actually known, but rather when in the exercise of due diligence it should have been known. Given that the insurance department knew that LICA had been involved with TransAmerican and was at least suspected of participation in fraudulent activities, we have no difficulty concluding that Hunt should have discovered the TransAmerican cause of action by May 1, 1981.

### III.

Although both of Hunt's RICO counts are grounded in the three allegedly fraudulent securities transactions, the two counts allege distinct theories of recovery. The first RICO count relies directly upon the three transactions as the requisite predicate acts. The second alleges as predicate acts several instances of mail fraud, which are said to have occurred when the defendants attempted to conceal the securities transactions through the mailing of false financial statements.

 The district court dismissed both counts primarily "for failure to allege a prior criminal conviction on the underlying predicate offenses." [3] Since the dismissal, however, the Supreme Court has issued its opinion in *Sedima*, in which the Court emphatically rejected the prior conviction requirement. *See Sedima*, 105 S.Ct. at 3284. Accordingly, the dismissal cannot stand on the ground relied upon below. Nevertheless, dismissal was proper if the RICO counts, like the other counts of the complaint, were barred by the statute of limitations.

 The limitations question is somewhat more complicated with regard to the RICO counts than for the other counts of the complaint. At the outset, there is some room for disagreement as to the appropriate limitations period. Either the one-year common law fraud period or the two-year securities fraud period—or both, one to each count—might be said to apply. Although we are inclined to apply the shorter period,[4] we leave resolution of this issue to

---

**3.** The court also found that "[t]he complaint fails to meet the requisite standard for particularity in pleading the proprietary injury element of a RICO action." Because we conclude that the RICO counts were barred by the statute of limitations, we need not address this finding.

**4.** In *Bowling v. Founders Title Co.*, 773 F.2d 1175, 1178 (11th Cir.1985), we applied Alabama's one-year limitations period for common law fraud to a RICO claim which was grounded in allegations of fraud. Nothing in that decision, however, indicates that the limitations period for fraud should apply to all RICO claims, and appellees point out that the appropriate

period may depend on the nature of the particular claim in question. Under such an approach, if it were determined that the RICO claims in this case were grounded in federal securities fraud the two-year period would be applicable.

This case-by-case approach, however, may be precluded by the Supreme Court's recent decision in *Wilson v. Garcia*, —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), in which the Court held that a state's general limitations period for personal injury actions governs all claims brought under 42 U.S.C. § 1983. *Wilson* was based largely on "practical considerations." 105 S.Ct. at 1945. Noting the wide variety of claims

another day since we conclude that the RICO counts are barred even by the more generous two-year period.

The two-year period began to run as of the time when Hunt or his predecessor as receiver should have had knowledge of the underlying predicate acts. We have already determined that the first receiver should have known of the Calvin Wilson and Advanced Education causes of action as of April 21, 1979, and that Hunt should have known of the TransAmerican claim as of May 1, 1981. Since the RICO claim based directly upon these transactions was not filed until May 2, 1983, the claim is time barred unless it relates back to the date of the original complaint. Yet the claim cannot relate back since it depends upon allegations of two transactions—Advanced Education and TransAmerican—which were not included in the original complaint and of which the defendants consequently had no notice. *See Woods*, 438 F.2d at 1299–1300. Therefore, the first RICO count was untimely.

On the other hand, the second RICO claim, based upon allegations of mail fraud, might well relate back to the original complaint. Although the count refers to the two transactions not originally included, these additional transactions are not crucial to the count. The predicate acts of mail fraud would still have been committed had defendants mailed false financial statements intended to conceal only the Calvin Wilson transaction. Even if the count does relate back, however, it is still time barred.

which may be brought under the § 1983 rubric, the Court stated that

[i]f the choice of the statute of limitations were to depend upon the particular facts or the precise legal theory of each claim, counsel could almost always argue, with considerable force, that two or more periods of limitations should apply to each § 1983 claim. Moreover, under such an approach different statutes of limitations would be applied to the various § 1983 claims arising in the same State, and multiple periods of limitations would often apply to the same case....

... [T]he legislative purpose to create an effective remedy ... is obstructed by uncertainty in the applicable statute of limitations, for scarce resources must be dissipated by useless litigation on collateral matters.

As we previously noted, the original receiver should have discovered the Calvin Wilson cause of action no later than April 21, 1979—more than two years prior to the filing of the original complaint. With discovery of that claim would logically have come awareness that false financial statements had been filed with the insurance department.

### IV.[5]

■■■ Hunt also argues that the district judge should have recused himself because two of the judge's law clerks accepted offers of employment from the law firm representing several of the defendants while this case was pending before the court. We disagree. Absent actual bias, disqualification is necessary only if a reasonable person, knowing all the circumstances, would harbor doubts about the judge's impartiality. *Potashnick v. Port City Construction Co.*, 609 F.2d 1101, 1111 (5th Cir.), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980). It is true that a reasonable person might wonder about a law clerk's impartiality in cases in which his future employer is serving as counsel. Clerks should not work on such cases, just as a judge should not hear cases in which his business associates are involved. A "clerk is forbidden to do all that is prohibited to the judge." *Hall v. Small Business Administration*, 695 F.2d 175, 179 (5th Cir.1983); *see also Kennedy v. Great Atlantic & Pacific Tea Co.*, 551 F.2d 593, 596 (5th Cir.1977). A judge is not necessarily forbidden, however, to do all that is prohib-

*Id.* at 1946–47 (footnotes omitted). This reasoning would seem to apply with equal force to RICO claims, which can be based upon an assortment of predicate criminal acts. Although there is probably no good reason to analogize RICO to the same cause of action in every state—some states, for instance, have enacted state versions of RICO which no doubt more closely resemble the federal cause of action than does common law fraud—the key lesson of *Wilson* seems to be that there should be applied "in each State ... the one most appropriate statute of limitations," *id.* at 1947, for all RICO actions.

5. Judge Lynne did not participate in the consideration or decision of this issue.

ited to each of his clerks. If a clerk has a possible conflict of interest, it is the clerk, not the judge, who must be disqualified. We do not believe that a law clerk's acceptance of future employment with a law firm would cause a reasonable person to doubt the judge's impartiality so long as the clerk refrains from participating in cases involving the firm in question. *Compare Hall,* 695 F.2d at 179 *and Miller Industries, Inc. v. Caterpillar Tractor Co.,* 516 F.Supp. 84, 89 (S.D.Ala.1980) (disqualification of judge required where clerk continued to work on case involving future employer) *with Smith v. Pepsico, Inc.,* 434 F.Supp. 524, 525 (S.D.Fla.1977) *and Reddy v. Jones,* 419 F.Supp. 1391, 1391 (W.D.N.C.1976) (disqualification not required where clerk was taken off case).

In this case, the record indicates that neither of the two clerks in question worked on the case or even talked with the judge about it to any significant extent. Although the case was assigned for a time to one of the clerks, the judge characterized this assignment as "ministerial only," and removed the file from the clerk once the clerk had accepted a job with the defendants' firm. Hunt does not contend otherwise, nor does he allege any actual bias on the part of the district judge. Consequently, we conclude that the judge properly denied Hunt's motion for recusal.

AFFIRMED.