In re **CHANDLER'S COVE INN, LTD.,** Debtor.

In re **CEDAR TIDE CORP.,** Debtor.

**Bankruptcy Nos. 187–71385–352, 187–71386–352.**

United States Bankruptcy Court, E.D. New York.

April 8, 1988.

Miller & Mintz by Sidney W. Mintz, New York City, for Chandler's Cove Inn, Ltd.

Pinks, Brooks, Stern & Arbeit by Robert S. Arbeit, Hauppauge, N.Y., for Cedar Tide Corp.

## OPINION

MARVIN A. HOLLAND, Bankruptcy Judge:

Presently before the court are identical motions made in each of the above-captioned cases requesting recusal of the undersigned pursuant to 28 U.S.C. § 455.

This court finds the motions legally insufficient and factually without merit. Recusal is unwarranted since no reasonable person, "were he to know all the circumstances, would harbor doubt about the judge's impartiality", *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1110 (5th Cir.1980); *Note, Disqualification of Judges and Justices in the Federal Courts*, 86 Harv.L.Rev. 736, 745 (1973) and "the proverbial average person on the street with knowledge of all the facts and circumstances alleged in the motion to recuse", *In re Martin Trigona*, 573 F.Supp. 1237 (D.C.Conn.1983), would not question this court's impartiality.

## STATEMENT OF FACTS

Cedar Tide filed its voluntary Chapter 11 petition on December 10, 1985 and in accordance with Local Rule 7 the case was assigned to the Honorable Cecelia H. Goetz.

In April of 1986 Judge Goetz authorized the debtor's retention of Pinks, Brooks, Stern & Arbeit (hereinafter "Pinks") as debtors' bankruptcy counsel after having granted the withdrawal application of Mr. Harold Spivack.

In June of 1986 Pinks commenced adversary proceeding 086–0037 against Chandler's Cove seeking to set aside a deed transferring a parcel of property from Cedar Tide to Chandler's Cove. On October 16, 1986 Judge Goetz held the transfer void as having been executed post-petition without proper court approval.

On September 26, 1986, Chandler's Cove Inn, Ltd. filed a petition in bankruptcy under Chapter 7 of Title 11 in the Southern District of New York. Mr. Isaac Nutovic, Esq. was appointed interim trustee by the court. In November of 1986 Pinks moved the Bankruptcy Court for the Southern District of New York (Buschman, J.), pursuant to Bankruptcy Rule 1014, to transfer venue of the case and all of its proceedings to the Eastern District of New York, asserting improper venue under 28 U.S.C. § 1408 [1]. The court (Buschman, J.), on December 3, 1986, pursuant to Bankruptcy Rule 1014(a)(2), summarily granted the motion since it was undisputed that the principal asset subject to that proceeding was located in the Eastern District of New York. On Chandler's Cove subsequent motion to reargue, which was granted and heard on December 29, 1986, Judge Buschman adhered to his original decision holding that "where a case is in liquidation, venue should, in the interest of justice, be placed where the principal assets are if they are located in the district different from the debtor's principal place of business" (citing to *In re Commonwealth Oil Ref. Co.*, 596 F.2d 1239, 1248 (5th Cir.1979), *cert. denied* 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980) (unpublished decision dated December 29, 1986)).

Pursuant to Local Rule 7, the *Chandler's Cove* bankruptcy case was assigned to Judge Goetz. On January 6, 1987, Isaac Nutovic, a Southern District panel trustee, was replaced as trustee by Robert Pryor, Esq., an Eastern District panel trustee.

---

**1.** 28 U.S.C. § 1408 states:

*Venue of cases under Title 11*

Except as provided in section 1410 of this title, a case under title 11 as may be commenced in the district court for the district—

(1) in which the domicile, residence, principal place of business in the United States, or the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business in the United States, or principal assets in the United States, of such person were located in any other district; or

(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

Mr. Pryor was then authorized to retain himself as attorney for the trustee.

On or about April 30, 1987, a motion was brought by Chandler's Cove seeking Judge Goetz's disqualification. Judge Goetz, on May 14, 1987, held that based upon the totality of the circumstances recusal was neither warranted nor necessary. Chandler's Cove appealed.

By further motion made on or about June 15, 1987, Chandler's Cove sought an order (1) granting the debtor leave to renew its prior motion for recusal; and (2) disqualifying Judge Goetz from hearing all core and non-core proceedings related to the administration of this case. Judge Goetz reserved on that motion.

While decisions on both the appeal and the new motion were pending, Judge Goetz learned that her law clerk had attended an adjourned Section 341 meeting in the Chandler's Cove case. Section 341(c) prohibits the court from presiding over or attending any such meeting, but contains no similar prohibition with regard to support personnel. Nevertheless, in order to avoid the possibility that the raising of this issue might delay the cases and in order to avoid not so much the appearance of impropriety but rather the possibility of a specious accusation of impropriety, Judge Goetz, on June 25, 1987, recused herself *sua sponte.* Chief Bankruptcy Judge Duberstein thereafter reassigned the cases to the undersigned.

Almost immediately thereafter, Chandler's Cove applied for an order to show cause to obtain recusal of the undersigned alleging an appearance of impropriety. After the order to show cause was denied for failure to comply with Local Bankruptcy Rule 22(d)[2], a motion was made pursuant to 28 U.S.C. § 455 seeking recusal of the undersigned with regard to both of the above-captioned cases and all proceedings thereunder and seeking reassignment of these cases by the Chief Judge of the District Court.

The motion is a collection of unorganized allegations containing factual misrepresentations, misleading innuendos, and conclusions unsubstantiated with regard either to fact or law. The moving papers makes no effort to comply with Bankruptcy Rule 9013 which requires that a "motion shall state with particularity the grounds therefore ..." and for this reason alone the motion should be denied. However, in order to put the matter to rest, at least in this court, the merits of the motion will be addressed.

It is difficult to determine from the moving papers the precise grounds upon which the movant relies. It appears, however, that the main thrust of its motion can be organized into the following points:

1) based upon the "totality of the circumstances" in the Cedar Tide/Chandler's Cove cases as being "more than merely suggestive that a substantial appearance of impropriety exists." Notice of Motion for Recusal, at 21;

2) a substantial appearance of impropriety exists regarding an ex parte application submitted to this court by movant requesting permission to employ Mr. Douglas Durnin, Esq. to argue an appeal on behalf of Chandler's Cove before the Honorable Judge Weinstein, Chief Judge of the District Court for the Eastern District of New York. The movant alleges that "although the order was submitted ... some two weeks prior to the scheduled date of the appeal, Hon. Judge Holland took no action until the issue was moot...." *Id.;*

3) recusal is warranted because the involvement of the law firm of Holland & Zinker in a bankruptcy case entitled: *Wilma Frank, individually and d/b/a Current Electric Co. and William C. Frank, Sr., a/k/a William Frank* demonstrates a "close working relationship between Pinks, Pryor and the law firm of Holland & Zinker." *Id.* The claim is made that the undersigned was a partner in the law firm of Holland & Zinker which represented the Franks. Robert Pryor served as its Chap-

---

**2.** Local Rule 22(d) states:
  *Order to Show Cause* No order to show cause to bring on a motion will be granted except upon a clear and specific showing by affidavit of good and sufficient reasons why a procedure other than notice of motion is necessary.

ter 7 trustee. The law firm of Pinks, Stern & Arbeit (the predecessors of Pinks, Brooks, Stern & Arbeit) was special counsel to the trustee in pursuing litigation against Carmel Construction Corporation. Therefore, it is argued, recusal is warranted because the undersigned "knew or should have known that Pinks and Pryor had been involved in a recent relationship with his law firm;" *Id.*

4) since Judge Goetz had earlier recused herself at least in part as a result of her law clerk's having attended a Section 341 meeting without her knowledge while she was out of the country, this court should do the same since "upon information and belief, the Honorable Judge Holland had dominion and control and/or responsibility for the conduct of ... [the law clerk] on April 9, 1987 and at the time that the incident upon which Goetz found reason for her recusal, took place." *Id.*

An affidavit in opposition to the motion requesting recusal was filed by "Pinks" stating that the movant has not put forth sufficient facts warranting recusal, and further, the motion submitted for recusal is based upon affirmation of counsel while the court's rules require an affidavit. A supplemental affidavit in opposition was filed by "Pinks" alleging that the motion to recuse was another step of Chandler's Cove to bury Cedar Tide's attorneys in paperwork and for that reason Bankruptcy Rule 9011 sanctions were sought.

## DISCUSSION

Bankruptcy rule 9013 requires that a request for an order, submitted by written motion, state with particularity the relief requested, and the basis for which the relief can be granted. Since this motion does neither, it is procedurally defective. However, this court shall address the four grounds for relief in reverse order.

■ 1) Recusal is requested upon allegations of improper conduct on the part of Judge Goetz's law clerk in attending a Section 341 meeting and the taint of the undersigned by virtue of routine contact with the law clerk thereafter.

(Although not entirely clear from the movant's papers, the undersigned, in addition to his own full case load, had undertaken full responsibility for Judge Goetz's case load during several temporary absences. During this time all matters which arose in the cases of Cedar Tide and Chandler's Cove and in all proceedings therein or related thereto were heard by the undersigned. This contact appears to have been the reason for Chief Judge Duberstein to have assigned these cases to the undersigned upon Judge Goetz's recusal. It was also during this time that Judge Goetz's law clerk attended the Section 341 meeting which was the subject of Judge Goetz's recusal decision).

Section 55(b) of the Bankruptcy Act of 1898, predecessor to the current Code, required that the Bankruptcy Judge preside over the first meeting of creditors, now called the Section 341 meeting under the present Code.

11 U.S.C. § 341(c) states: "The court may not preside at, and may not attend, any meeting under this section...." This provision was enacted as a part of the 1978 Code, one of the stated purposes being removal from the Bankruptcy Judge those administrative functions required under the previous Bankruptcy Act. *See* 1 Norton Bankr.L. & Prac. §§ 3.01, 4.04, 4.06 and 4.07.

It is clear, therefore, that the prohibition against judicial attendance was enacted to relieve the Bankruptcy Judge of an obligation incidental to an administrative function. It was never intended to make improper conduct which the predecessor statute had mandated.

Implicit in the moving papers is the suggestion that any attendance at a Section 341 meeting not only by the judge presiding over the case, but by anyone with whom he had any sort of close contact is impropriety sufficient to mandate recusal. However, the Clerk of the Court functions with almost the same proximity to the judge as does the judge's law clerk; and until the recent implementation of the U.S. Trustee system, it was the Clerk of the Court who presided over the Section 341

meetings. Since the Clerk serves at the pleasure of the judges, "dominion and control" over one who attends a Section 341 meeting cannot be grounds for recusal. Nor can the judge's knowledge of what occurred at a Section 341 meeting require recusal. Transcripts of these meetings are frequently prepared. When this is done they become a part of the court's file. As such they are often offered into evidence in matters pending before this court. Clearly then, the mere acquisition by the judge of knowledge of what transpired at a Section 341 meeting can neither be or appear to be improper as to mandate a recusal. Any alleged bias requiring recusal must be extrajudicial in nature, *In re International Business Machines Corp.*, 618 F.2d 923, 928–29 (2d Cir.1980), and not an opinion formed from facts learned by the judge during his participation in the matter. *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). Thus, mere contact by itself between the judge and any judicial support personnel who may have been in attendance at a Section 341 meeting without more cannot be in any way improper.

What then can be either the argument or the authority for seeking recusal upon such a set of facts?—the movant offers none and we hold that none exists.

Nor does this line of reasoning indicate a lesser sensitivity to judicial propriety than was observed by my distinguished colleague who first dealt with this problem. Judge Goetz's recusal was based not only upon the avoidance of any appearance of impropriety but also to a large extent upon the desire not to permit the moving parties to further compound and multiply the myriad proceedings before this court and thereby unnecessarily complicate these two cases. That she did so is a testament to her judicial acuity and temperament; it does not however create a precedent that mandates recusal of any judge who has had any peripheral contact with her former law clerk.

Furthermore, the movant's argument is predicated upon the alleged misconduct of the law clerk, and not the court. Even if this argument had any validity, then it is the law clerk, and not the judge, to whom recusal should be directed. If a clerk has a possible conflict of interest or where a reasonable person might question the law clerk's impartiality, then the clerk should be disqualified, and not the court. *Hunt v. American Bank & Trust Co. of Baton Rouge*, 783 F.2d 1011, 1015–16 (11th Cir. 1986). As the court in *Hunt* states "[a] clerk is forbidden to do all that is prohibited to the judge," *id.* at 1015, *quoting*, *Hall v. Small Business Administration*, 695 F.2d 175, 179 (5th Cir.1983), but "a judge is not necessarily forbidden, however, to do all that is prohibited to each of his clerks." *Id.*

■ 2) Recusal is also sought because of an "involvement of the law firm of Holland & Zinker with the *Current Electric* case before Judge Goetz." (Movant's notice of motion at 22.) Movant claims that this "involvement" "demonstrates a close working relationship between Pinks, Pryor and the law firm of Holland & Zinker, of which Hon. Judge Holland was a partner." *Id.* However, what the movant fails to take light of was that Holland & Zinker's legal representation of the debtors in *Current Electric* was a bankruptcy case *wholly unrelated* to the instant cases and proceedings. Moreover, there is no claim that Holland & Zinker represented any of the parties herein or any interest now before this court; only that several years ago in a case in which they represented a party, (the debtor), Pryor (the successor trustee of Chandler's Cove after the change of venue and prior to conversion of the case from one under Chapter 7 on 4/24/87) was the trustee and Pinks (who now represents Cedar Tide) was special counsel to the trustee.

Our Circuit Court of Appeals has unequivocally held that "[t]he prior representation of a party by a judge or his firm with regard to a matter unrelated to litigation before him does not automatically require recusal." *National Auto Brokers v. General Motors Corp.*, 572 F.2d 953, 958 (2d Cir.1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979). Nor

does "any tenuous connection of a judge to a lawyer who has represented or dealt with a litigant in a case before that judge ... automatically disqualify the judge." *In re Martin–Trigona*, 573 F.Supp. at 1243; *Accord, In re Beard*, 811 F.2d 818, 831–32 (4th Cir.1987) (where the court denied recusal based upon the petitioner's claim that the presiding judge's past financial relationships with the lawyers representing parties in this Chapter 11 proceeding would have an effect on the outcome of the proceeding); *see also* Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3544 at 589 (1984 ed.) (where the commentators similarly state: "A judge is not necessarily disqualified merely because a party to a case was a client of the judge while the judge was in practice if the case *is not connected* with any matter in which the judge had acted as counsel") (Emphasis added).

Although it is true that Robert Pryor was the trustee in *Current Electric*, that Pinks was special counsel to the trustee, and that the undersigned was a member of the firm representing the debtor, that case was not associated with or connected to any of the *Cedar Tide* and *Chandler's Cove* bankruptcy cases and proceedings. No relationship, financial or legal, exists between the court and any attorneys or their clients to these bankruptcy cases. Nor was the firm within which the undersigned was then associated the attorney for any party or interest presently appearing before the court.

The relationship between the parties to the *Current Electric* case and these cases is non-existent. Not only did Holland & Zinker's representation of the debtors in the *Current Electric* case occur more than three years ago, but moreover, the undersigned was not the attorney of record and did not actively participate in the case. As the relationship between the undersigned and the parties to this proceeding is remote, the movant bears a substantial burden in showing that this proceeding is substantially affected by the undersigned's past relationships. *See, e.g., In re New Mexico Natural Gas Antitrust Litigation*, 620 F.2d 794, 796 (10th Cir.1980) (where the

court reasons that when disqualification is requested because of a judge's interest in a lawsuit in which the court presides, as that interest lessens disqualification is required only if the litigation *substantially affects* that particular interest) (emphasis added); *Accord, In re Johnson–Allen*, 68 B.R. 812, 818 (Bankr.E.D.Pa.1987). Moreover, 28 U.S.C. § 455(b)(2) explicitly states—a judge shall disqualify himself "where in private practice he served as a lawyer in the *matter in controversy*, or a lawyer with whom he previously practiced law served during such association as a lawyer *concerning* the matter...." (Emphasis added). Not only is recusal by virtue of the *Current Electric* case not required by 28 U.S.C. § 455, but recusal upon such a non-existent ground would constitute an abrogation of this court's duty to preside over these two cases, *see In re Martin Trigona*, 573 F.Supp. at 1243, *quoting, Pessin v. Keeneland Ass'n*, 274 F.Supp. 513, 514 (E.D.Ky. 1967) (where the court states " 'It is a judge's duty to refuse to sit when he is disqualified but it is equally his duty to sit where there is no valid reason for recusal.' "); *see also Lazofsky v. Sommerset Bus Co., Inc.*, 389 F.Supp. 1041, 1045 (E.D. N.Y.1975) (where the court states "The Court's sworn duty is not to ... [recuse itself] unless it believes that there are proper and reasonable grounds therefor."), and may lead to a substantial waste of judicial resources. *In re International Business Machines Corp.*, 618 F.2d at 933; *United States v. Daley*, 564 F.2d 645, 651 (2d Cir. 1977), *cert. denied* 435 U.S. 933, 98 S.Ct. 1508, 55 L.Ed.2d 530 (1978); *Rosen v. Sugarman*, 357 F.2d 794, 797 (2d Cir.1966).

3) The Durnin allegations are set forth in the moving papers as follows:

That there is a substantial appearance of impropriety in the facts relating to a certain order submitted to the Hon. Judge Holland, after a decision was rendered by the Hon. Judge Goetz on June 22, 1987, which purported to permit DOUGLAS DURNIN, ESQ., to argue an appeal on behalf of CHANDLER'S INN on June 15, 1987 before the Honorable Judge Weinstein, Chief Judge of the Dis-

trict Court for the Eastern District of New York. Upon information and belief, although the order of retention was submitted by your affiant to the Clerk of the Bankruptcy Court, some two weeks prior to the date of the scheduled argument of the appeal, the Hon. Judge Holland took no action until the issue was moot and the corporate debtor, CHANDLER'S INN, was officially without retained counsel to argue its appeal.

That on July 16, 1987, the Hon. Judge Holland refused to sign the retention order authorizing CHANDLER'S INN's retention of DOUGLAS DURNIN, as its appellate counsel.

That the conduct of ISAAC NUTOVIC, in failing to file a notice of appeal from Judge Goetz's order in the adversary proceeding, that the conduct of ROBERT PRYOR in failing to seek enlargement of the time to file a notice of appeal in order to preserve CHANDLER'S INN's rights as well as those of its creditors, when combined with the Hon. Judge Holland's acts or omissions in failing to sign a retention order, gives the appearance that this Court was complicit in inappropriate conduct designed to defeat CHANDLER'S INN's appellate rights (Notice of motion for recusal, at 25–6).

These facts are simply misrepresented. The Bankruptcy clerk's docket, a portion of which is annexed in the Appendix, shows that on 5/28/87, by docket entry number 66, a proposed order authorizing Mr. Durnin to represent Chandler's Cove in an appeal (CV 88–2205) before Chief District Judge Weinstein was not signed. The court (Goetz, J.) reasoned that pursuant to § 327(a) employment of counsel is restricted to "disinterested persons". Section 101(13) defines a "disinterested person" as a person that is not a creditor. Since Mr. Durnin is a creditor, the debtor's applica-

tion to employ Mr. Durnin on appeal must be denied. Thereafter, on July 16, 1987, an order for reconsideration or reargument of the *ex parte* application to retain Mr. Durnin on appeal was submitted to this court for signature (docket entry #89). This court (Holland, J.) rejected the order for failure to comply with local Bankruptcy Rule 12.[3] The Order was not resubmitted until Friday, August 28 (Appendix "A") at 1:04 P.M. to the Clerk's Office where it was processed and subsequently transmitted to Chambers where it was signed on September 2 and docketed on September 4. Absent notice to Chambers of a specific time urgency, that is about the usual time between the submission of a proposed order to the Clerk's Office and the signing of the order in Chambers.

The movant alleges that Chandler's Cove was officially without retained counsel on appeal in adversary proceeding 086–0037. However, the District Court civil docket sheet, as well as the title page to the brief submitted by appellant Chandler's Cove, shows that Mr. Durnin was in fact acting as attorney for the appellant notwithstanding the debtor's incomplete and feeble attempts to obtain authorization thereof. (See annexed Appendix "B").

4) Finally, the movant, while contending that there is no intention to raise the proposition that Judge Holland is biased against Chandler's Cove and/or its counsel, suggests that the totality of the circumstances herein "are more than merely suggestive that a substantial appearance of impropriety exists." *Id.* at 24. Since the movant acknowledges that this court is not biased against Chandler's Inn and/or its counsel, we need not address this issue. However, this court must determine whether "an appearance of impartiality" exists mandating recusal.

---

**3.** Local Bankruptcy Rule 12 states:

*Defective Petitions, Schedules and Other Papers*

(a) Any petition, schedule or other paper which is submitted to the Clerk of the Court for filing shall be affixed in a proper legal backing.

(b) The Clerk of the Court shall not accept for filing any petition, schedule or other paper which is illegible, incomplete or otherwise de-

fective according to these or other applicable rules and prescribed official forms.

(c) Failure to comply with these or other applicable rules and prescribed forms shall constitute grounds for the Bankruptcy Judge to refuse to consider any petition, schedule or other paper which has been submitted for his consideration.

A judge, once having drawn a proceeding, should not be recused based upon unsupported, irrational or highly tenuous speculation "for were he or she to do so, the price of maintaining the purity of appearance would be to empower litigants or third parties the right of exercising a negative veto over the assignment of judges." *See In re United States,* 666 F.2d 690, 694–95 (1st Cir.1981). With this in mind, we must decide whether the appearance of impartiality is real and strong enough to require disqualification pursuant to 28 U.S. C. § 455.

In applying § 455 courts have reached differing conclusions as to whether the standard for recusal is bias in fact or bias in appearance.

The origin of the present statutory scheme derives from the first disqualification statute enacted by Congress in 1792. The statute provided for disqualification where a judge was "concerned in interest" in the cause, or had been "of counsel for either party." 1 Stat., ch. 36, § 11, Act of May 8, 1792. Thereafter, in 1821, the statute was amended to include "relationship to a party" as a grounds for disqualification. 3 Stat., ch. 51, § 643. In 1911, another basis for disqualification was added to the existing statute—if the judge had been a material witness for a party. This statute became section 20 of the Judicial Code of 1911. Section 20 was the subject of two major criticisms: (1) there was no mechanism requiring disqualification for bias or prejudice, in fact or appearance, and (2) the issue of disqualification was wholly within the discretion of the challenged judge. *State of Idaho v. Freeman,* 507 F.Supp. 706, 714 (D.Idaho 1981). In 1948, section 20 was recodified as 28 U.S.C. § 455. Section 455 created a dilemma. On the one hand, it required a judge to disqualify himself *sua sponte,* while, on the other hand, articulating an equally strong requirement or "duty to sit" on an assignment, even over a party's objection, if a valid statutory ground for disqualification was absent.

In 1974 a new code provision was passed (Act of Dec. 5, 1974, Pub.L. 93–512, § 1, 88 Stat. 1609; Nov. 6, 1978, Pub.L. 95–598, Title II, § 214(a), 92 Stat. 2661) providing for judicial disqualification where the judge's impartiality "might reasonably be questioned." 28 U.S.C. § 455(a). This amended version is now the basic provision on disqualification of federal judges. *See U.S. v. Wolfson,* 558 F.2d 59, 61–62 (2d Cir.1977). This code provision adopts an objective standard creating the so-called "appearance of justice" rule thereby abrogating "the duty to sit" concept previously found in the federal courts. *In re International Business Machines Corp.,* 618 F.2d at 929. The courts look to see "whether a reasonable person, knowing all the circumstances, would believe that the judge's impartiality could be questioned." *Id.* at 929; *In re Beard,* 811 F.2d at 827; *U.S. v. Poludniak,* 657 F.2d 948, 954 (8th Cir. 1981), *cert. denied,* 455 U.S. 940, 102 S.Ct. 1431, 71 L.Ed.2d 650 (1981); *U.S. v. Mirkin,* 649 F.2d 78, 82 (1st Cir.1981); *Note: The Elusive Appearance of Propriety: Judicial Disqualification under Section 455,* 25 DePaul L.Rev. 104 (1975).

The adoption of the appearance of justice rule imposes on the court a *sua sponte* duty to determine its ability to preside. As the movant correctly points out, since § 455 places a duty upon the presiding judge to effect and evaluate his own actions, an affidavit requesting recusal need not be filed. *United States v. Heldt,* 668 F.2d 1238, 1271 (D.C.Cir.1981); 13A Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d, § 3550 at 626 (1984 ed.). However, "[a] judge is presumed to be qualified, and the movant bears a *substantial burden* of providing otherwise." *State of Idaho v. Freeman,* 478 F.Supp. 33, 35 (D.Idaho 1979) (emphasis added). The movant herein has failed to sustain its burden.

Accordingly, the motion for recusal in all respects is denied.